UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LORNE LEROY SCOTT,<br><br>　　　　　Petitioner,<br><br>　v.<br><br>CAMMILLA WAMSLEY, et al.,<br><br>　　　　　Respondents. | Case No. 2:25-cv-1819<br><br>ORDER ON PETITIONER'S WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 |

## I.   INTRODUCTION

Before the Court is petitioner Lorne Leroy Scott's ("Scott") petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Dkt. 1. Scott is a legal permanent resident who has been detained by Respondents[1] for over 20 months while they seek to remove him from the United States. Dkt. 1 ¶ 1. Scott argues that his continued detention is unlawful because the criminal convictions that subjected him to mandatory detention have been vacated and his detention has become unconstitutionally punitive. Because the question whether Scott is subject to mandatory

---

[1] Respondents include Cammilla Wamsley, Seattle Field Office Director of Immigration Customs Enforcement (ICE); Bruce Scott, Warden of the Northwest ICE Processing Center ("NWIPC"); Kristi Noem, Secretary of the Department of Homeland Security; Pamela Bondi, Attorney General; and the Department of Homeland Security (collectively "Respondents"). The U.S. Attorney's Office has appeared on behalf of all Respondents other than Bruce Scott (collectively, "Federal Respondents").

ORDER ON PETITIONER'S WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 - 1

detention is inextricably linked to his removal proceedings, the Court lacks jurisdiction to review it. But even if Scott is subject to mandatory detention, his detention without the possibility of a bond hearing has become so prolonged that it violates the Due Process clause of the Fifth Amendment. Scott's petition is therefore DENIED in part and GRANTED in part. Scott's request for immediate release is DENIED. However, Scott's request for an individualized bond hearing is GRANTED. Within 14 days of this Order, Respondents must provide Scott a bond hearing at which they bear the burden of justifying detention by clear and convincing evidence that he is a flight risk or danger to the community. *See Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011).

## II.   BACKGROUND

Helped by his U.S. citizen father, Scott, a citizen of Jamaica, entered the United States as a lawful permanent resident on October 19, 2012. Dkt. 4-1 at 1; Dkt. 4-6 at 3. Scott visited Jamaica several times until 2015, after which he has remained in the United States. Dkt. 4-6 at 3.

Several years later, a criminal case was brought against Scott for an incident that occurred in 2018. Dkt. 13-2 at 2. On January 31, 2020, Scott pleaded guilty to Cal. Penal Code § 211, home invasion robbery, before a California Superior Court. *Id.* Scott was sentenced to six years in prison for the robbery and an additional three years under Cal. Penal Code § 12022.5(a), California's sentencing enhancement for the use of a firearm in the commission of a felony. *Id*. With credit given for his pre-conviction incarceration, Scott served five years and three months. Dkt. 4-6 at 1.

On March 12, 2024, the Department of Homeland Security (DHS) served the California state prison holding Scott with a warrant for his arrest on immigration violations. Dkt. 13-3 at 2. Immigration and Customs Enforcement (ICE) arrested Scott and transferred him from prison to

immigration detention. Dkt. 13-1 at 4. Scott has remained in custody ever since under the mandatory detention provision of 8 U.S.C. § 1226(c). Dkt. 13-7 at 2; Dkt. 13-4 at 2.

DHS began removal proceedings against Scott immediately. Dkt. 13-5 at 2. Based on Scott's robbery conviction, an immigration judge ("IJ") issued an order finding Scott removable under 8 U.S.C. § 1227(a)(2)(A)(iii)[2] because of his status under 8 U.S.C. § 1101(a)(43)(F)[3] and (G)[4]. Dkt. 13-8 at 3. In December 2024, the IJ denied Scott's claims for withholding and deferral of removal. Dkt. 4 ¶¶ 7–8. Soon after, Scott filed a notice of appeal before the Board of Immigration Appeals ("BIA"). Dkt. 4 ¶ 9.

Meanwhile, Scott returned to California Superior Court to challenge his robbery conviction. He moved to withdraw his guilty plea and vacate his robbery conviction under California Penal Code § 1473.7(a)(1). Dkt. 4-2 at 2. The court granted his request in February 2025, finding that Scott's plea was involuntary because of his inability to "meaningfully understand, defend against, and knowingly accept the immigrations consequences of his plea[]." *Id.* Scott instead entered guilty pleas to Cal. Penal Code §§ 459, burglary, and 25400(a)(3), carrying a concealed firearm. *Id.* at 3. The court sentenced Scott to six years on the burglary count and eight months on the concealed firearm count. *Id.* Scott was given credit for the time previously served and his new sentence was "deemed served." *Id.*

---

[2] 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any [non-citizen] who is convicted of an aggravated felony at any time after admission is deportable.").

[3] 8 U.S.C. § 1101(a)(43)(F) ("The term 'aggravated felony' means" "a crime of violence" "for which the term of imprisonment at least one year.").

[4] 8 U.S.C. § 1101(a)(43)(G) ("The term 'aggravated felony' means" "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment at least one year.").

ORDER ON PETITIONER'S WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 - 3

With his robbery conviction vacated and his removal order pending before the BIA, Scott moved to remand and terminate his removal proceedings, as the removal order was based on the now-vacated robbery conviction. Dkt. 4 ¶ 11.

Scott also moved for a *Joseph*[5] hearing before an IJ. Dkt. 4 ¶¶ 12–16. The hearing was held on August 8, 2025. Dkt. 13-7 at 2. The IJ declined to change Scott's conditions because he "now has two convictions," the burglary and concealed firearm convictions, "for which he received an aggregate sentence to confinement of 5 years or more, [making Scott] inadmissible under [8 U.S.C. § 1182(a)(2)(B)] and subject to mandatory detention under [8 U.S.C. § 1226(c)(1)(A)]." *Id.* Scott appealed the IJ's *Joseph* decision, which is pending before the BIA. Dkt. 4 ¶ 17. On September 19, 2025, Scott filed this habeas petition. Dkt. 1.

On September 26, while these proceedings were pending, the BIA issued an opinion on Scott's motion to remand and his appeal of his removal order. Dkt. 13-8. The BIA, distinguishing *Bent v. Garland*, 115 F.4th 934, 940 (9th Cir. 2024), denied Scott's remand motion and dismissed his appeal of the removal order. Dkt. 13-8 at 4–9. The BIA concluded that, despite the vacatur of his robbery conviction, Scott remained "removable as charged for having committed an aggravated felony . . . and is statutorily ineligible for asylum and withholding of removal, for having been convicted of a particularly serious crime." Dkt. 13-8 at 6. Scott petitioned the Ninth Circuit for review of the BIA's decision, and the Ninth Circuit further stayed his removal. Dkt. 11 at 4; *see Scott v. Bondi*, No. 25-6070 (9th Cir. filed Sep. 26, 2025). As discussed further below, *see infra* Section IV.B, Scott's argument that his detention violates the

---

[5] An individual detained under 8 U.S.C. § 1226(c) may ask an IJ to reconsider whether the mandatory detention provision applies to him. This procedure is known as a *Joseph* hearing. *Rodriguez v. Robbins*, 804 F.3d 1060, 1078 (9th Cir. 2015) (citing *In re Joseph*, 22 I. & N. Dec. 799 (BIA 1999)).

ORDER ON PETITIONER'S WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 - 4

INA is based largely on his contention that the BIA's decision violates the holding of *Bent* and is obviously wrong.

Since his release from prison, Scott has been detained in three different immigration detention facilities: Golden State Annex in McFarland, California; Anchorage Correctional Complex in Anchorage, Alaska; and the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, where he remains today. Dkt. 4 ¶ 19. Scott has been diagnosed with Crohn's disease. Dkt. 4-4 at 2. While incarcerated in California's state prison system, Scott's Crohn's disease was in remission. Dkt. 4 ¶ 27. While in Respondents' custody, Scott's Crohn's disease has relapsed and so he deals with daily "nausea, vomiting, diarrhea, and fatigue." *Id.* Scott contends ICE has failed to provide him adequate medical care or dietary accommodations and has submitted numerous medical records documenting the lack of improvement in his condition. *Id.* ¶ 21; *see generally* Dkt. 4-4. In response, Respondents have submitted a declaration from Dr. Eddie Wang, the NWIPC clinic director, who attests that Scott had a colonoscopy on September 9, 2025; was seen by a gastrointestinal specialist on October 27, 2025; and at the specialist's recommendation, has been provided a "referral to a gastrointestinal pharmacist to discuss monoclonal antibody treatment." Dkt. 17 ¶¶ 20–22.

The instant petition for writ of habeas corpus and a request for an expedited briefing schedule was filed on September 19, 2025. Dkt. 1. The request for an expedited briefing schedule was granted. Dkt. 9. Respondent's return memorandum was filed on October 2, 2025. Dkt. 10. Scott's traverse was filed on October 9, 2025. Dkt. 14. The Court held oral argument on November 12, 2025. Dkt. 18.

As of now, Scott's petition for review of the BIA's decision upholding his removal order is pending before the Ninth Circuit, and Scott's appeal of the IJ's *Joseph* decision is pending before the BIA.

ORDER ON PETITIONER'S WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 - 5

### III.    LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner must prove by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

### IV.    DISCUSSION

With Scott's petition, he seeks his immediate release, or alternatively, an order requiring Respondents to "schedule a bond hearing before a neutral decisionmaker within seven days at which DHS bears the burden of justifying detention by clear and convincing evidence." Dkt. 3 at 21. To support his request, Scott makes three arguments. He argues that his further detention violates the Immigration and Naturalization Act ("INA"), *id.* at 7–8, substantive due process, *id.* at 8–11, and procedural due process, *id.* at 11–16. But before the Court can consider the merits of Scott's arguments, it must address Respondents' argument that Scott should first be required to exhaust his administrative remedies.

#### A.    Exhaustion of administrative remedies is not required.

As mentioned earlier, the IJ's *Joseph* decision is pending before the BIA. Respondents argue that the Court should "require [Scott] to exhaust his administrative remedies before bringing his statutory claim before a district court." Dkt. 11 at 6. For Scott's claims, "[t]he exhaustion requirement is *prudential*, rather than jurisdictional." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (emphasis added) (citations omitted). In the Ninth Circuit, courts may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and

(3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). That said, "even if the three *Puga* factors weigh in favor of prudential exhaustion, a court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" *Hernandez*, 872 F.3d at 988 (quoting *Laing v. Ashcroft,* 370 F.3d 994, 1000 (9th Cir. 2004)). The Court will consider each factor in turn.

As for *Puga's* first factor, Respondents argue that agency consideration is necessary because the BIA "has a special expertise in reviewing the question" Scott presents. Dkt. 11 at 7 (citing *Francisco Cortez v. Nielsen*, No. 19-cv-00754-PJH, 2019 WL 1508458, at *3 (N.D. Cal. Apr. 5, 2019)). In response, Scott makes two arguments. First, agency expertise is unnecessary because the question his claim presents is a "question of statutory interpretation and due process, which is the province of the courts." Dkt. 3 at 18. Second, Scott cannot exhaust his constitutional claims because the agency, and more specifically the BIA, lack authority to adjudicate them. *Id.* at 17–18. Here, the first factor leans against requiring exhaustion. Scott's continued detention is fundamentally a question of law. *Hernandez*, 872 F.3d at 989 ("[A]n administrative appellate record is not necessary to resolve the purely legal question[.]").

With regards to *Puga's* second factor, Respondents argue that "allowing a 'relaxation of the exhaustion requirement' would promote the avoidance of appealing similar IJ orders to the BIA." Dkt. 11 at 7. Scott argues that reviewing the merits of his petition would not encourage "deliberate bypass of the administrative scheme" because he has in fact done the opposite: he has diligently pursued administrative remedies, but "the process has proven incapable of timely

resolving his claims while his liberty is at stake." Dkt. 3 at 18. This too leans against requiring exhaustion.

As for *Puga's* third factor, Respondents argue that the BIA "may provide Scott with the relief sought here," allowing the agency to correct its own mistakes and preclude the need for judicial review. Dkt. 11 at 7. In response, Scott argues that "Respondents ignore the obvious— the BIA's recent decision" on his removal order is contrary to controlling law, making exhaustion a "futile gesture." Dkt. 14 at 3 (quoting *Hernandez*, 872 F.3d at 988). Here, the Court again agrees with Scott. When the agency's position on the "question at issue appears already set, and it is very likely what the result of recourse to administrative remedies would be, such recourse would be futile and is not required." *Hernandez*, 872 F.3d at 989 (quoting *El Rescate Legal Servs., Inc. v. Exec. Off. of Immigr. Rev.*, 959 F.2d 742, 747 (9th Cir. 1991)). The BIA's reasoning in Scott's appeal of his removal order demonstrates that the agency's position is "already set," making further exhaustion futile.

Finally, even if the *Puga* factors weighed in favor of exhaustion, the requirement may be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez*, 872 F.3d at 988 (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)). Courts in this Circuit have regularly waived exhaustion requirements for noncitizens who face "irreparable injury" from being detained for "months without a bond hearing, and where several additional months may pass before the BIA renders a decision on a pending appeal." *Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 962 (N.D. Cal. 2019). Scott has been in custody for more than 20 months, and his two pending appeals before the BIA and the Ninth Circuit may yet take many months to resolve. Dkt. 14 at 10 n.3.

ORDER ON PETITIONER'S WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 - 8

### B. This Court lacks jurisdiction to review whether Scott's detention violates the INA because his detention is inextricably linked to his removal proceedings.

Scott's claim that his mandatory detention under 8 U.S.C. § 1226(c) violates the INA hinges on his argument that the BIA's decision upholding his removal order ignores the holding of *Bent v. Garland*, 115 F.4th 934 (9th Cir. 2024) and is obviously wrong. *See* Dkt. 14 at 5 ("[T]he BIA refused to give effect to the state court's order vacating Mr. Scott's conviction and in doing so, disregarded binding precedent."). Despite the strength of this argument—indeed, Respondents do not meaningfully contest it—granting Scott relief on this basis would exceed the scope of this Court's power in immigration habeas proceedings.

The petitioner in *Bent*, just like Scott, "moved to reopen his removal proceedings after a California court, acting under California Penal Code § 1473.7(a)(1), vacated the conviction that formed the basis of his removal because it was premised on an involuntary plea." 115 F.4th at 937. The BIA had denied Bent's motion to reopen, concluding that the vacatur under § 1473.7(a)(1) was a "rehabilitative" vacatur granted "to prevent immigration hardships" that would not affect the "conviction's validity for immigration purposes." *Id*. at 939. The BIA brushed aside the state court's finding that Bent had been unable to meaningfully understand the immigration consequences of his plea, characterizing it as "contradicted by the transcript of the plea colloquy." *Id.*

The Ninth Circuit held this was plain error. *Id.* at 941. The court explained that "[i]f a state court vacates a conviction on account of a procedural or substantive defect, that conviction is not a conviction for immigration purposes*.*" *Id*. at 940 (citation modified). It held that it was not necessary to "dust off [a] dictionary or delve into the legislative history of § 1473.7(a)(1)" to conclude "the statute provides a vehicle to vacate a conviction to address a substantive or procedural error that renders a conviction legally invalid." *Id*. "The plain text" of the California

statute "does *not* permit a state court to vacate a conviction to alleviate any immigration consequences arising from the conviction or sentence." *Id*. Because of the state court's finding that Bent's plea was involuntary in violation of the Fifth Amendment, the Ninth Circuit concluded it was "clear" that "the court granted vacatur because the plea was constitutionally deficient—*not* to alleviate any adverse immigration consequences." *Id.* at 941.

The vacatur of Scott's robbery conviction is indistinguishable from the proceedings in *Bent*. Dkt. 4-2 at 1–3 (order setting aside convictions "in their entirety on the substantive grounds that they are legally invalid" and resulted from "an involuntary plea in violation of the Due Process Clause"). But in upholding his removal order based on the vacated convictions, the BIA once again looked behind the state court's findings and the plain text of the statute to draw its own conclusion that because Scott simultaneously pleaded guilty to non-removable offenses, "the respondent's plea was amended for immigration purposes, rather than actually vacated for substantive or procedural errors, as contemplated under section 1473.7(a)(1)." Dkt. 13-8 at 6.

Scott makes a strong argument that this decision is irreconcilable with *Bent* and will be overturned in his appeal to the Ninth Circuit. Dkt. 14 at 7–9. Respondents' return memorandum does not attempt to defend the BIA's reasoning, noting only that the BIA dismissed his appeal and denied his motion to reopen. Dkt. 11 at 4. But the posture of Scott's removal proceedings limits this Court's ability to review whether his detention under § 1226(c) violates the INA.

The Ninth Circuit has instructed district courts that when a claim by a noncitizen, "however it is framed, challenges the procedure and substance of an agency determination that is inextricably linked to the order of removal, it is prohibited by section 1252(a)(5)" of the INA. *Martinez v. Napolitano*, 704 F.3d 620, 623 (9th Cir. 2012). Section 1252(a)(5) provides that "[t]he exclusive means to challenge an order of removal is the petition for review process" in the circuit court, which Scott is currently pursuing. *Id.* at 622.

ORDER ON PETITIONER'S WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 - 10

Scott argues that these provisions do not restrict this Court's jurisdiction because he is challenging only his *detention*, not the removal order itself. He argues that this Court retains the power to interpret the detention provisions of 8 U.S.C. § 1226 or to review the IJ's determination in his *Joseph* hearing on whether the government is "substantially unlikely to establish the charge of deportability." Dkt. 14 at 4–6. These arguments are unpersuasive. Scott's arguments against his mandatory detention are not based on a constitutional or statutory interpretation challenge to the framework of § 1226. *Cf. Demore v. Kim*, 538 U.S. 510, 516–17 (2003) (holding that federal courts have jurisdiction to review constitutional challenges to § 1226(c)); *Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 12 F.4th 321, 331–32 (3d Cir. 2021) (adjudicating challenge to burden of proof applicable in *Joseph* hearings). Instead, Scott challenges how the IJ and the BIA have applied the statutory framework to the facts of his case, in decisions that encompass both his detention and removability. Scott does not cite, and this Court has been unable to find, any precedent for granting habeas relief in analogous circumstances. Nor has the Court been able to find any district court decision granting habeas relief based on reviewing the substance of an IJ's individualized *Joseph* hearing determination.[6]

Despite the strength of his arguments, granting Scott habeas relief on the basis that his detention violates § 1226(c) when the BIA has upheld his removal order would essentially be

---

[6] The posture of *Joseph* itself also detracts from Scott's arguments. In *Joseph*, the BIA held that an IJ may determine whether an LPR "is not properly included" in a mandatory detention category "either before or after the conclusion of the underlying removal case" in front of the IJ. *Matter of Joseph*, 22 I. & N. Dec. 799, 800 (BIA 1999). But "[i]f this threshold bond decision is made after" the IJ's decision on removal, the IJ "may rely on that underlying merits determination." *Id.* In *Joseph*, the BIA contemplated the IJ's ability to order release on bond either before the determination of removability or after the IJ had ruled against removability but the government had appealed that merits determination to the BIA. *See id.* at 804–07. *Joseph* does not address the situation here, where the BIA has already upheld (however erroneously) the underlying removal order.

granting provisional relief based on a prediction that the Ninth Circuit will overturn that removal order. This is precisely the type of determination that the Ninth Circuit has held is prohibited as "inextricably linked" to an order of removal. *Martinez*, 704 F.3d at 623. Instead, as explained further below, the strength of Scott's arguments in his petition for review are properly considered as part of this district's multi-factor test for evaluating whether his ongoing detention without a bond hearing under § 1226(c) has become unconstitutionally prolonged.[7]

### C. Scott has not shown that his detention violates substantive due process.

"[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 647 (9th Cir. 2021) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). The Ninth Circuit has held that "a civil detainee awaiting adjudication is entitled to conditions of confinement that are not punitive." *Id.* (quoting *Jones v. Blanas*, 393 F.3d 918, 933 (9th Cir. 2004)). "A restriction is punitive where it is intended to punish, or where it is excessive in relation to its non-punitive purpose, or is employed to achieve objectives that could be accomplished in so many alternative and less harsh methods." *Id.* (citation modified).

Scott argues that his continued detention is "punitive" because his Crohn's disease goes untreated. Dkt. 3 at 10–11. In response, Respondents argue that the Court should not consider this argument because it is "essentially a conditions of confinement claim," rather than a

---

[7] Even if the Court granted relief on this ground, the appropriate relief would be to order a bond hearing under § 1226(a)—essentially the same relief granted to remedy the procedural due process violation. *See Avilez v. Garland*, 69 F.4th 525, 530 (9th Cir. 2023) ("Under Subsection A—the default detention provision—a noncitizen is entitled to a bond hearing at which the IJ considers whether the noncitizen is a flight risk or a danger to the community."); *Joseph*, 22 I. & N. Dec. at 808–09 ("Our determination . . . that the respondent is not properly included in a mandatory detention category would not ordinarily end the bond inquiry. It simply means that the lawful permanent resident could be considered by the Immigration Judge for release under the general bond provisions of section 236(a) of the Act.").

"[c]hallenge to the legality or duration of confinement" that is the proper subject of a habeas petition. Dkt. 11 at 8.

In the context of post-conviction federal prisoners, the Ninth Circuit has "explicitly rejected habeas jurisdiction over . . . claims related to the conditions of [a petitioner's] confinement." *Pinson v. Carvajal*, 69 F.4th 1059, 1067 (9th Cir. 2023). At the end of *Pinson*, however, the panel recognized "that the Supreme Court has left open the key question of whether there are circumstances when a challenge to the conditions of confinement is properly brought in a petition for writ of habeas corpus." *Id.* at 1075 (citing *Ziglar v. Abbasi*, 582 U.S. 120, 144–45 (2017)). Because *Ziglar* is a case arising from immigration detention, this Court reads *Pinson* as leaving some ambiguity around whether § 2241 habeas petitions may challenge conditions of confinement for civil immigration detainees.

But even if *Pinson* prevents habeas jurisdiction over such claims, federal courts "have long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation," and "an implied cause of action exists to challenge allegedly unconstitutional conditions of confinement." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020) (addressing conditions at ICE detention center during COVID-19 pandemic). Where, as here, a habeas petitioner brings due process claims and invokes 28 U.S.C. § 1331, "which provides subject matter jurisdiction irrespective of the accompanying habeas petition," the petitioner may also pursue equitable relief from unconstitutional conditions of confinement. *Roman*, 977 F.3d at 941.

The problem for Scott is not the Court's power to hear claims arising from the treatment of his Crohn's disease, but rather that he has not met his burden of proof to show that the deficient treatment has violated his constitutional rights. As part of the requirement that conditions of pretrial detention not be punitive, "[t]he Fifth Amendment requires the government

to provide conditions of reasonable health and safety to people in its custody." *Roman*, 977 F.3d at 943 (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989)). To prove a violation of this duty, a petitioner must show: (1) the government "made an intentional decision with respect to the conditions under which the plaintiff was confined"; (2) "those conditions put the plaintiff at substantial risk of suffering serious harm"; (3) the government "did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved" and (4) "by not taking such measures, the government caused the plaintiff's injuries." *Id.* (quoting *Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018)) (citation modified). "With respect to the third element, the government's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case." *Id.* (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)) (citation modified). "A mere lack of due care is not enough; a plaintiff must show something akin to reckless disregard." *Id.* (citation modified).

Scott does not address this standard, and though he broadly contends that Respondents have not provided him with adequate medication or dietary accommodations for his Crohn's disease, he has not identified any specific decisions which amount to reckless disregard for conditions that put him at substantial risk of suffering serious harm. Nor has he established that "such a violation would justify his immediate release, as opposed to injunctive relief that would leave him detained while ameliorating any unconstitutional conditions at the NWIPC." *Ortiz v. Barr*, No. 20-497-RSM-BAT, 2020 WL 13577427, at *7 n.8 (W.D. Wash. Apr. 10, 2020). Scott has therefore not established a substantive due process violation that would require his release from custody. As with the likelihood of his success challenging his removal order before the

Ninth Circuit, however, Scott's evidence regarding the conditions of his confinement will also be considered as part of the multi-factor test evaluating his procedural due process claim.

### D. Scott's prolonged detention without a bond hearing violates procedural due process.

"In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (quoting *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)). The Fifth Amendment's Due Process Clause "forbids the government to deprive any person of liberty without due process of law." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citation modified). Because "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects," a "statute permitting indefinite detention" of a noncitizen "would raise a serious constitutional problem." *Id.*

The Ninth Circuit, in *Rodriguez v. Robbins*, initially held that those detained pursuant to 8 U.S.C. § 1226(c) would be entitled to "automatic bond hearings after six months of detention." 804 F.3d 1060, 1085 (9th Cir. 2015). The *Rodriguez* court reasoned that, to avoid the serious constitutional problem of a statute permitting indefinite detention, the mandatory language of § 1226(c) could be construed to "contain an implicit reasonable time implication." *Id.* at 1069 (quoting *Zadvydas*, 533 U.S. at 682). The Supreme Court reversed this decision in *Jennings v. Rodriguez*, holding instead that the plain text of § 1226(c) "mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." 583 U.S. 281, 305−06 (2018). The Court declined to reach the question whether such mandatory, indefinite

detention would violate due process, and instead remanded the due process claims to the Ninth Circuit for consideration in the first instance. *Id.* at 312.

On remand, the Ninth Circuit instructed district courts to determine the "minimum requirements of due process" when considering procedural due process claims challenging detention under 8 U.S.C. § 1226(c). *Rodriguez v. Marin*, 909 F.3d 252, 255 (9th Cir. 2018). Since then, a "majority of district courts" consider "a number of factors to determine whether a noncitizen's mandatory detention under 1226(c) violates due process." *Martinez v. Clark*, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *7 (W.D. Wash. May 23, 2019), *report and recommendation adopted*, No. 18-CV-01669-RAJ, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019) (collecting cases). Both parties analyze Scott's procedural due process claim through the multi-factor test created in *Martinez v. Clark*. Dkt. 11 at 11–13; Dkt. 14 at 13–17. Those factors include

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable; (4) the nature of the crimes the petitioner committed; (5) the conditions of detention; (6) delays in the removal proceedings caused by the petitioner; (7) delays in the removal proceedings caused by the government; and (8) the likelihood that the removal proceedings will result in a final order of removal.

*Id.* The Court will discuss each factor in turn.

The first, "length of detention," is "the most important factor." *Id.* at *9. Respondents concede that this factor favors Scott, Dkt. 11 at 12, and the Court agrees. The *Martinez* court found 13 months to be an unreasonable length of detention. *Id.* Scott has been in immigration detention since March 12, 2024—more than 20 months.

When weighing the second factor, "the likely duration of future detention," a court must consider the "anticipated duration of all removal proceedings including administrative and judicial appeals." *Id.* (citation omitted). Scott argues that this factor leans in his favor because he

"recently filed a petition for review with the Ninth Circuit on September 26, 2025" and the process takes "'approximately 12–20 months from the notice of appeal date.'" Dkt. 14 at 14 (citing *Martinez*, 2019 WL 5968089, at *9). Respondents make no argument about the second factor. Dkt. 11 at 12. As in *Martinez*, this factor favors a bond hearing for Scott.

The third and fourth factors consider "whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable" and "the nature of the crimes the petitioner committed." *Martinez*, 2019 WL 5968089, at *9. Scott argues these factors "would ordinarily weigh in the government's favor, but they should not in this case" for two reasons. Dkt. 14 at 14. First, his offense "does not even render him removable." *Id.* Second, although his prison time (five years and three months) exceeds his 20 months in ICE custody, he "used much of it productively by working in fire camps" and this factor should not be weighed heavily as "due process should not be dependent on their criminal convictions." *Id.* Respondents argue that these factors weigh in their favor, given Scott's convictions are "serious felonies," and he was "sentence[d to] more than six years – approximately four times the length of his immigration detention." Dkt. 11 at 12. These two factors lean in favor of the Government. *See Martinez*, 2019 WL 5968089, at *9 (factors three and four weigh in favor of government when petitioner was sentenced to five years for drug-related felonies and had been detained for 13 months.).

With the fifth factor, "the conditions of detention," the Court considers the "conditions of the detention facility where the petitioner is detained." *Id.* (citation omitted). The closer the conditions are to "penal confinement, the stronger [the petitioner's] argument." *Id.* (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 860 (D. Minn. 2019)). Scott argues that this factor weighs in his favor because he has suffered medical neglect at NWIPC. Dkt. 14 at 15. Respondents provide little argument other than to point out that Scott is being held at an "immigration detention facility," implying that it is neither a jail nor a prison. Dkt. 11 at 12. This

ORDER ON PETITIONER'S WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 - 17

factor leans in favor of Scott. Scott has presented at least some evidence that while in Respondents' custody, he has struggled to obtain appropriate medical care and meals for his Crohn's disease, and that these conditions have been even worse than those he experienced in state prison. Dkt. 4 ¶¶ 20–27; *see* Dkt. 4-4. Scott deals with chronic symptoms including "nausea, vomiting, diarrhea, and fatigue." *Id.* ¶ 20.

As to the sixth and seventh factors, the Court considers "delays in the removal proceedings caused by the petitioner" and "delays in the removal proceedings caused by the government." *Martinez*, 2019 WL 5968089, at *9. Scott argues that he has pursued his defense with diligence and any delay was caused by "immigration court's scheduling." Dkt. 14 at 16. In response, Respondents contend Scott's "litigation choices alone are the reason for his delayed time in immigration detention." Dkt. 11 at 12. Based on the record, factor six leans in favor of Scott. There is no evidence that Scott engaged in deliberate delay tactics. Scott simply requested two reasonable adjournments to obtain counsel and otherwise diligently pursued his defense. Dkt. 12 ¶¶ 7–23. *Martinez*, 2019 WL 5968089, at *10 (two continuances to "prepare" is "reasonable."). Similarly, factor seven leans in favor of Respondents, as they did not engage in deliberate delay tactics. Dkt. 12 ¶¶ 7–23.

Finally, the last factor concerns "likelihood that the removal proceedings will result in a final order of removal." *Martinez*, 2019 WL 5968089, at *9. The Court must consider "whether the noncitizen has asserted any defenses to removal." *Id.* at *10. This last factor leans strongly in favor of Scott. With the vacatur of his robbery conviction, the conviction fundamental to his removal order, Scott has a "good faith challenge to removal." *Id.* ("[W]here a noncitizen has asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'"). For the reasons previously explained, *see supra* Section IV.B,

Scott has not just a good faith challenge, but strong arguments that the BIA erred by upholding his removal order and will be reversed by the Ninth Circuit.

After considering Scott's claim under the eight factors identified under *Martinez*, five of the eight factors—including length of detention, the most important factor—lean in favor of Scott. Therefore, Scott's continued detention under § 1226(c) without a bond hearing has become unreasonable and violates procedural due process.

The parties disagree as to the contours of the bond hearing. Scott asks the Court for an order requiring Respondents to justify his continued "detention by clear and convincing evidence." Dkt. 14 at 17. Respondents, while acknowledging that "courts in this District have applied the clear-and-convincing standard when ordering bond hearings for petitioners that were subject to mandatory prolonged detention," maintain that neither the Constitution nor the INA requires such a standard. Dkt. 11 at 13–14.

When the Supreme Court reversed *Rodriguez* with *Jennings*, it did not "engage in any discussion of the specific evidentiary standard applicable to bond hearings, and there is no indication that the [Supreme] Court was reversing the Ninth Circuit as to that particular issue." *Cortez v. Sessions*, 318 F. Supp. 3d 1134, 1147 (N.D. Cal. 2018).

In *Singh v. Holder*, the Ninth Circuit clarified that "the government should be held to a clear and convincing evidence standard of proof" in a bond hearing for a detainee under 8 U.S.C. § 1226(a), the default discretionary provision governing detention of a noncitizen while removal proceedings are pending. 638 F.3d 1196, 1203 (9th Cir. 2011). The Ninth Circuit did not confine its holding to bond hearings under Section 1226(a). *See id.*; *see also Banda v. McAleenan,* 385 F. Supp. 3d 1099, 1107 (W.D. Wash. 2019) (reaching the same conclusion regarding Singh's holding). Indeed, the *Singh* court suggested that the burden of proof remains the same regardless of the stage of removal proceedings or the portion of the INA authorizing detention. *See id.* at

1205 (rejecting argument that the burden should be lower for detainees already afforded a removal hearing). Accordingly, the Court agrees that Respondents will be required to meet the clear and convincing standard at Scott's bond hearing. *See id.*; *see also Banda*, 385 F. Supp. 3d at 1107; *see also Martinez v. Clark*, 124 F.4th 775, 785–86 (9th Cir. 2024) (finding the BIA applied the correct legal standard in requiring the government to prove by clear and convincing evidence that a noncitizen detained under Section 1226(c) was a danger to the community); *Aleman Gonzalez v. Barr*, 955 F.3d 762, 766 (9th Cir. 2020), *rev'd on other grounds sub nom. Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022) (affirming decision requiring the government bear a heightened burden of proof at a bond hearing for a § 1231(a)(6) detainee as a matter of due process).

## V.   CONCLUSION

For the reasons explained above, the Court ORDERS as follows:

1. The petition for writ of habeas corpus (Dkt. 1) is GRANTED IN PART and DENIED IN PART.

2. Within 14 days of this Order, Respondents must provide Petitioner Lorne Leroy Scott with an individualized bond hearing that complies with the requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011).

Dated this 8th day of December, 2025.

Tiffany M. Cartwright
United States District Judge